IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BYRON F. DAVID,<br>    Debtor-Appellant, | )<br>)<br>) |
| v. | )     Case No. 1:21-cv-00174 |
| | ) |
| DONALD F. KING,<br>    Trustee-Appellee. | )<br>)<br>) |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Debtor-Appellant Byron F. David's Appeal from United States Bankruptcy Judge Klinette H. Kindred's February 1, 2021 Order Denying Debtor's Motion to Alter or Amend (Dkt. No. 1). The appeal presents a straightforward question of law: whether a Chapter 11 trustee has standing to hire professional persons on behalf of a bankruptcy estate *after* the bankruptcy proceedings have converted from Chapter 11 to Chapter 13. The bankruptcy court held that standing exists in such circumstances, where the retention relates to professional services rendered pre-conversion. The parties' competing positions on the merits of that decision have been fully briefed, making this appeal ripe for disposition. For the reasons that follow, the Court VACATES the bankruptcy court's order and GRANTS, in part, David's appeal.[1]

**I.   Background**

On July 14, 2018, David filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code. *See* Appeal Record Pt. 1 (Dkt. No. 2-1) at 2. Donald F. King was appointed as the Chapter 7 trustee and, on November 2, 2018, he sought court approval for the estate's retention

---

[1] Although the Court vacates the bankruptcy court's February 1, 2021 Order, it does not vacate the bankruptcy court's November 24, 2020 Order.

1

of Odin, Feldman & Pittleman P.C. ("Odin Feldman") pursuant to 11 U.S.C. § 327(a). *Id.* at 3. The bankruptcy court granted King's application on November 20, 2018. *Id.*

On April 10, 2019, the bankruptcy court entered an order converting the case from Chapter 7 to one proceeding under Chapter 11. *Id*. at 5–6. That event automatically terminated King's role as Chapter 7 trustee and his court-approved employment of Odin Feldman on behalf of the estate. Appeal Record Pt. 4 (Dkt. No. 2-4) at 259. Shortly thereafter, however, King was appointed as Chapter 11 trustee for the estate. Appeal Record Pt. 1 at 6. As Chapter 11 trustee, King continued to utilize Odin Feldman's services but failed to seek post-conversion approval for their retention under 11 U.S.C. § 327(a). Appeal record Pt. 4 at 259–60.

On May 21, 2020, the bankruptcy court entered an order converting the case from Chapter 11 to Chapter 13. *See* Appeal Record Pt. 1 at 24. That order once again terminated King's role as trustee for the estate, pursuant to 11 U.S.C. § 348(e).

It also authorized King to file "an application to approve the chapter 11 administrative expenses." *See* Appellant's App'x (Dkt. No. 5-1) at 13. On June 22, 2020, King filed an "Application for Compensation for Odin, Feldman & Pittleman P.C. as Counsel for the Chapter 11 Trustee." *See* Appeal Record Pt. 1 at 25–24. King sought "payment of professional fees in the amount of $43,598.00 and expenses in the amount of $70.00" pursuant to 11 U.S.C. § 330. *See* Appellant's App'x at 15.

On September 20, 2020, the bankruptcy court partially denied King's application—finding it had no power to compensate Odin Feldman under 11 U.S.C. § 330 because such compensation required an antecedent order that authorized the firm's retention under 11 U.S.C. § 327(a) and King had failed to present an application to the bankruptcy court while serving as the Chapter 11 trustee. *Id.* Accordingly, the bankruptcy court permitted King (in his "capacity as the Chapter 11

2

Trustee") leave to file *nunc pro tunc* employment applications for Odin Feldman that would be effective as of April 10, 2019—the date the Chapter 11 proceedings commenced. *Id.* at 55.

On October 13, 2020, King filed an application to retain Odin Feldman "pursuant to 11 U.S.C. § 327(a), effective as of April 10, 2019." *Id.* at 84. David opposed the application and, on November 12, 2020, the bankruptcy court heard argument on the issue. *Id.* at 117. The bankruptcy court determined that, in granting King the opportunity to "file *nunc pro tunc* employment applications" for Odin Feldman, it had "ruled partially based on the erroneous understanding that fees could not be awarded for services that [we]re performed prior to the entry of a retention order," *i.e.*, "that a *nunc pro tunc* retention was necessary to award such fees." *Id.* at 152. However, the bankruptcy court noted that "[u]pon review, nothing in the Bankruptcy Code requires that compensated services must have been performed only after the effective date of an employment order." *Id.* at 154. Accordingly, the bankruptcy court approved King's pending employment application effective as of the hearing date—not *nunc pro tunc*—and then awarded Odin Feldman fees for past services its attorneys rendered while the case proceeded under Chapter 11. *Id.* at 156–72.

The bankruptcy court issued that ruling over the objections of David, who contended that only a trustee could file a Section 327(a) application for authorization to employ professional persons and that King had ceased serving as trustee more than four months before the hearing date. *Id.* at 127–142. The bankruptcy court described David's argument as "overly formalistic" and geared toward protecting a "potential windfall." *Id.* at 155. The bankruptcy court then held that because "a trustee and his professionals have standing to appear in a converted case to preserve and satisfy their claims for professional compensation . . . the Chapter 11 trustee in this case and his professionals do have standing to *seek employment* and compensation in this case." *Id.*

3

(emphasis added). The bankruptcy court explicitly relied on *In re DeLash*, 260 B.R. 4 (Bankr. E.D. Cal. 2000) in reaching that conclusion. *Id.*

The bankruptcy court formalized its holding twelve days later, when it issued a written order that read "the chapter 11 Trustee is authorized the employ the law firm of Odin, Feldman & Pittleman P.C. . . . effective as of November 12, 2020." *See id.* at 171–72 (hereafter the "November 24 Order"). On December 8, 2020, David filed with the bankruptcy court a motion to reconsider the November 24 Order pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Bankr. P. 9023. *Id.* at 175–190. Through that motion, David argued, *inter alia*, that the bankruptcy court committed clear error when it permitted King to retain Odin Feldman on behalf of the bankruptcy estate on November 12, 2020 because "[a] Former Chapter 11 Trustee cannot retain professionals following conversion of a case from one chapter to another." *Id.* at 175.

On January 28, 2021, the bankruptcy court heard argument on David's motion to reconsider. *Id.* at 233. The bankruptcy court concluded that David had not "made a new argument" in his motion and, thus, had provided no basis for the bankruptcy court to revisit its November 24 Order. *Id.* at 234. In so ruling, the bankruptcy court stated: *In re Harold & Williams Dev. Co.*, 977 F.2d 906 (4th Cir. 1992) "clearly [wa]s applicable here in affirming that the trustee ha[d] standing to apply for retention and fees." *Id.* at 234. On February 1, 2021, the bankruptcy court issued a written order memorializing its denial of reconsideration. *See* Appellee's App'x (Dkt. No. 6-1) at 539 (hereafter the "February 1 Order"). This appeal followed.

4

## II.     Legal Framework

Federal Rule of Bankruptcy Procedure 8001 authorizes an appeal as of right from final judgments, orders, and decrees of the bankruptcy court. *See* Fed. R. Bankr. P. 8001(a) (governing appeals pursuant to 28 U.S.C. §§ 158(a)(1) and (a)(2)). On a properly taken appeal, the district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Terry v. Meredith (In re Meredith),* 527 F.3d 372, 375 (4th Cir. 2008) (citing *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315, 319 (4th Cir. 2001)).

## III.    Standard of Review

A motion to reconsider results in a final order and may be granted to correct a clear error of law or to prevent manifest injustice. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).[2] An appeal of an order denying a motion to reconsider, therefore, can succeed only if the Court determines that the bankruptcy court erred twice: first, by entering the underlying order that the appellant sought to have reconsidered; and, second, by entering the order that failed to correct the underlying order. *In re Yankah*, 514 B.R. 159, 165 (E.D. Va. 2014). Accordingly, the Court's review of both the November 24 and February 1 Orders is appropriate when considering the bankruptcy court's denial of David's postjudgment motion to reconsider its final judgment. *Brown v. French,* 147 F.3d 307, 311 (4th Cir. 1998) ("designation of a postjudgment motion in the notice of appeal is adequate to support a review of the final judgment when the intent to do so is clear"); *see also Hamlett v. Krippendorf*, Case No. 7:02-cv-00060, 2002 WL 32882039, at *2–*3

---

[2] A motion to reconsider also may be granted in order "(1) to accommodate an intervening change in controlling law; [or] (2) to account for new evidence not available at trial," *Pac. Ins. Co.*, 148 F.3d at 403, but neither ground is at issue in David's appeal.

5

(W.D. Va. Mar. 21, 2002) (looking to underlying order in adjudicating appeal of bankruptcy court's order on motion to reconsider).

Additionally, reviewing the underlying order is necessary for this Court to determine what standard of review applies to the appeal. *Hamlett*, 2002 WL 32882039, at *2 n.3 ("appealing a motion to reconsider a ruling on a question of law involves a different standard of review than appealing a motion to reconsider a ruling on a question of discretion"). And where, as here, the Court faces an appeal of a bankruptcy court order adjudicating a reconsideration motion brought pursuant to Fed. R. Civ. P. 59(e), "the Court should review the appealed order . . . for abuse of discretion unless the underlying order to which the Rule 59 motion applies is a ruling on a pure question of law, in which case the Court should review the order denying reconsideration *de novo*." *Id.* at *3.

When a court reviews an order on a Rule 59 motion *de novo*, it "in essence . . . review[s] the underlying] order almost as if [appellant] had appealed it directly because the Court could then determine whether the [underlying order] contained a 'clear error of law'" that should have been corrected on reconsideration. *Id.* at *3 n.5 (citing *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (clear error of law is sufficient basis to grant Rule 59(e) motion)). Conversely, if a court reviews a bankruptcy court's reconsideration order under an abuse of discretion standard, and the argument provided on appeal is that the "underlying order was simply wrong," the court may only rule in the appellant's favor if "the [underlying order] was so irrational that failure to remedy it on [reconsideration] was an abuse of discretion" such that "no reasonable person could agree with [it]." *Id.* at *3–*4.

The critical question, thus, is whether the November 24 Order involved a pure question of law. David argues it did, rendering the February 1 Order subject to *de novo* review. *See* Appellant's

6

Brief (Dkt. No. 5) at 3–5. King argues it did not and that the "abuse of discretion" standard should apply. *See* Appellee's Brief (Dkt. No. 6) at 30. Both positions have merit and the governing principles stand in some tension. However, for the reasons that follow, the Court finds David's position to be the correct one.

Neither party can dispute that a court's interpretation of what 11 U.S.C. § 327(a) permits is a matter of statutory construction subject to *de novo* review. *See Lamie v. United States Trustee*, 540 U.S. 526, 533–39 (2004). Even so, it is well settled "that the decision under § 327 rests within the *discretion* of the bankruptcy court," *In re Harold & Williams*, 977 F.2d at 908 (emphasis added), and "[d]ecisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion." *In re Yankah*, 514 B.R. at 163 (collecting cases); *see also In re Boy Scouts of America*, 630 B.R. 122, 128 (D. Del. 2021) (a court generally "review[s] the Bankruptcy Court's decision to approve [a law firm]'s application for employment under § 327(a) for an abuse of discretion"); *In re Decade S.A.C., LLC*, Case No. 18-cv-1880, 2020 WL 564903, at *4 (D. Del. Feb. 5, 2020) ("[t]he Court also reviews a bankruptcy court's decision to approve an application for employment for abuse of discretion"); *In re Romano*, 564 B.R. 613, 617 (N.D. Ind. 2016) ("a bankruptcy court's denial of an application to appoint a professional *post facto* is reviewed for abuse of discretion").

A close reading of the language in 11 U.S.C. § 327(a) and the cases interpreting it suggests that the discretion afforded to the bankruptcy court in this area focuses on decisions to approve (or not) a trustee's choice of lawyers, accountants, or other professional persons whose competency, necessity, and/or "disinterested" status are at issue. *See, e.g.*, *In re Harold & Williams*, 977 F.2d at 908 (challenge to bankruptcy court order denying request to approve appointment of one person to serve as both lawyer and accountant); *In re Persaud*, 496 B.R. 667, 676–77 (E.D.N.Y. 2013)

(affirming bankruptcy court order that approved retention of law firm under 11 U.S.C. § 327(a) despite creditor's objection that the law firm held an interest adverse to the bankruptcy estate's); *In re Coal River Resources, Inc.*, 321 B.R. 184, 187–88 (W.D. Va. 2005) (finding bankruptcy court "did not err" in disqualifying a law firm based "on a finding of actual conflict" between it and the bankruptcy estate); *In re Johnson*, 312 B.R. 810, 818–25 (E.D. Va. 2004) (upholding bankruptcy court's decision to authorize law firm's engagement despite alleged "actual conflict of interest" between it and the bankruptcy estate).

The deference afforded such decisions is entirely reasonable when considering the "fact-intensive inquiry" required by the Fourth Circuit's standard for "evaluating [the] disinterestedness" of proposed professional persons. *In re Palumbo Family Ltd. P'ship*, 182 B.R. 447 (Bankr. E.D. Va. 1995) (citing *In re Harold & Williams*, 977 F.2d at 909–10); *see also In re Coal River Resources, Inc.*, 321 B.R. at 184 (same); *In re Persaud*, 496 B.R. at 674 (showing bankruptcy court held evidentiary hearing on issue of disinterestedness). But the issue presently before this Court does not implicate similar considerations; it requires no factual investigation that would place the bankruptcy court in the best position to render a decision. Instead, the issue presently before this Court turns on a purely legal question that asks whether 11 U.S.C. § 327(a) permits a *former* trustee, with the court's approval, to "employ one or more attorneys" on behalf of the bankruptcy estate. Because answering that question requires only a conclusion of law, the Court will review the bankruptcy court's decision *de novo*. *See Hamlett*, 2002 WL 32882039, at *2 ("a denial of a Rule 59(e) motion in which the underlying order was a question of law is reviewed *de novo*").

## IV. Discussion

### a. The "New" Argument Presented in David's Rule 59(e) Motion

Ordinarily, relief is not appropriate on a motion to reconsider that simply "asks[s] the Court to rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). The bankruptcy court recognized as much and denied David's Rule 59(e) motion after concluding at oral argument that David "ha[d]n't made a new argument" on reconsideration. Appellant's App'x at 233.

The issue, however, is that such an approach works only where the original, underlying argument was raised, analyzed, and fully addressed in the first instance. *See Above the Belt, Inc.*, 99 F.R.D. at 101 ("The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."). The briefs argued by the parties at the November 12, 2020 hearing focused on whether King—as former trustee—had standing to (a) "seek the Court's approval under 11 U.S.C. § 327 to employ professional persons" and (b) file a reconsideration motion requesting the same. *See* Appellant's App'x at 87, 91. The bankruptcy court rejected David's argument that standing does not exist in such instances as "overly formalistic" and endorsed King's argument that a former trustee retained "the right . . . to appeal or file pleadings on matters relevant to the administration of the case during the period in which the trustee was serving." *Id.* at 109, 135.

Both arguments, however, assumed that any authorization the bankruptcy court granted to King under 11 U.S.C. § 327 would be *nunc pro tunc* or retroactive "to the date of the conversion of this case from Chapter 7 to Chapter 11." *Id.* at 86. As such, neither party addressed whether— assuming he obtained court authorization—King had the capacity to employ Odin Feldman on a

9

date after which he ceased serving as the bankruptcy estate's trustee. *See id.* at 152 ("The parties' arguments and prior pleadings demonstrate that they, too, believe that *nunc pro tunc* retention was necessary to award compensation in this case."). Thus, when the bankruptcy court granted King's Section 327(a) application "effective . . . November 12th, 2020," *id.* at 156, it "made a decision outside the adversarial issues presented to [it] by the parties." *Above the Belt, Inc.*, 99 F.R.D. at 101.

On December 8, 2020, David asked the bankruptcy court to correct what he believed was a "clear error of law" that permitted King to "employ the law firm of Odin, Feldman & Pittleman, P.C., generally, as attorneys for the Trustee *and the estate*, effective as of November 12, 2020." Appeal Record Pt. 4 at 407 (emphasis added). The basis for David's motion was, *inter alia*, his belief that "[a] Former Chapter 11 Trustee cannot retain professionals following conversion of a case from one chapter to another." Appellant's App'x at 175; *see also id.* at 225 ("under [Section] 327, [one] ha[s] to be in the shoes of a trustee or examiner to have the authority to hire counsel"); *id.* at 226 ("under [Section] 327(a), [King] had no authority to retain counsel" post-conversion).[3] At oral argument, David offered the following analogy to illustrate this point:

---

[3] Comparison of this argument with what David principally presented at the November 12, 2020 hearing highlights the distinct points David tried to make initially versus on reconsideration. *See* Appellant's App'x at 131 (arguing on November 12, 2020 that "under [Section] 327(a), only a trustee or an examiner can file an application" to retain professional persons), 135 (arguing on November 12, 2020 that King "can no longer file the application to retain a professional[] because he doesn't hold the fiduciary office that is necessary under [Section] 327(a) to file that"), and 137 (arguing on November 12, 2020, King's motion should be denied because "he lack[ed] standing to contest the Court's ruling on this subject"); *but see id.* (arguing on November 12, 2020 that "in order to retain a professional under 327(a), an individual must be a trustee or an examiner. And Mr. King is not"), *id.* at 139 (arguing on November 12, 2020 that "[t]he only persons who can employ [professional persons] under [Section] 327(a) are examiners and trustees").

> Eight days ago, Donald Trump ceased being president. Because his office was terminated around noon on the 20th of January, today, he may no longer issue pardons. He doesn't have the office that allows him to issue pardons. And we suggest, with all due respect to how stark that analogy may be, that when Mr. King ceased to be trustee, the moment after [the bankruptcy court] entered [its] order on May 21st 2020, under 348(e), his authority to hire professionals ceased just as Mr. Trump's authority to do anything as President of the United States ceased on the 20th of January.

*Id.* at 224–25. The bankruptcy court found that this was not a "new argument" and then concluded it had "already reviewed th[e] issue and determined that it [wa]s without merit [because t]he *Williams* case clearly [wa]s applicable . . . in affirming that the trustee has standing to apply for retention and fees." *Id.* at 233–34.

In so concluding, the bankruptcy court did not disaggregate David's distinct (if muddied) arguments (a) that a former trustee has no "standing" to file or litigate a post-conversion application under Section 327(a); and (b) that the same former trustee has no authority to employ professional persons on behalf of the bankruptcy estate post-conversion. To be sure, David essentially made the same argument in furtherance of both points. But this Court cannot agree that refocusing a previous argument to support a new point that had not previously been fully addressed by either party constitutes a failure to present a new issue for review. Accordingly, the Court finds that David presented the bankruptcy court with a new argument in his motion for reconsideration that should have been subjected to more substantive review by the bankruptcy court.

   **b.**  **The Court's *De Novo* Review**

The question David put before the bankruptcy court in his Rule 59(e) motion was whether a trustee "act[s] for the bankruptcy estate" when he hires a law firm for that estate under 11 U.S.C. § 327(a). This Court finds the answer is yes—employing a law firm on behalf of a bankruptcy estate amounts to acting for the estate. That much is clear when looking at the Bankruptcy Code. Section 327(a) permits a bankruptcy "trustee . . . to employ . . . professional persons . . . *to represent*

11

*or assist the trustee in carrying out the trustee's duties under this title*." 11 U.S.C. § 327(a). Those duties are fiduciary in nature and enumerated in 11 U.S.C. § 704. They include, *inter alia*, "collect[ing] and reduc[ing] to money the property of the estate . . .; investigat[ing] the financial affairs of the debtor . . .; [and] if a purpose would be served, examin[ing] proofs of claims and object[ing] to the allowance of any claim that is improper[.]" 11 U.S.C. § 704 (a)(1), (4), (5).

Thus, in allowing King to "employ the law firm of Odin, Feldman & Pittleman, P.C., generally, as attorneys for the Trustee *and the estate*, effective as of November 12, 2020," the bankruptcy court permitted King to act on behalf of the bankruptcy estate despite his status as former trustee. This was clear error that should have been corrected on reconsideration. Although the *DeLash* case arguably supported the bankruptcy court's finding as to King's ability to file and litigate a Section 327(a) application post-conversion, the *DeLash* court also reiterated that a former trustee "has no standing to . . . act for the bankruptcy estate." *In re Delash*, 260 B.R. at 7. The bankruptcy court's November 24 Order, thus, irreconcilably conflicted with the authority it relied upon—as David made clear in his motion to reconsider. *See* Appeal Record Pt. 4 at 420–23 (analyzing *DeLash* and the cases it relied upon).

In declining to recognize as much on reconsideration, the bankruptcy court cited to the Fourth Circuit's *Williams* decision and found no error in its prior conclusion that King "ha[d] standing to apply for retention and fees." Appellant's App'x at 234 (citing *In re Harold & Williams Dev. Co.*, 977 F.2d 906 (4th Cir. 1992)). The bankruptcy court's conclusion focused on the act of *applying* for retention and fees. This Court on review finds the *Williams* case provides no such support with respect to the separate act of *hiring* professional persons post-conversion.

In *Williams*, the issue of "standing" was not related to one's authority or capacity to "act for the bankruptcy estate." Instead, it dealt entirely with the concept of standing vis-à-vis mootness,

12

*i.e.*, that a professional person seeking court approval of a contested Section 327 application still presented a live controversy despite subsequent case developments obviating any present or future need for the services for which approval was sought. *See* 977 F.2d at 909 n.1.

Crucially, the *Williams* case involved a petition for approval that was filed by the debtor-in-possession while the case still was proceeding under Chapter 11. *Id.* at 908. In other words, there was no dispute that the individual who filed the petition at issue in *Williams* still served as a fiduciary of the bankruptcy estate at the time he sought to act on its behalf. And herein lies the issue. Citation to *Williams* would have been appropriate if the issue arising from the November 24 Order was one of "standing" as it related to, in King's words, "matters relevant to the administration of the case during the period in which the trustee was serving." Appellant's App'x at 109. But a finding that King had "standing" to litigate such matters says nothing about his ability to act on behalf of the bankruptcy estate by hiring a law firm on November 12, 2020—a time outside that period, when King no longer served as the bankruptcy estate's trustee. Put differently, while *Williams* adequately addresses the standing argument David presented at the November 12, 2020 hearing, it does not provide any insight into the argument he made on reconsideration regarding a former trustee's incapacity to act for the bankruptcy estate.

Regarding that new argument, the more applicable message from *Williams* is that although a bankruptcy court sits in equity, it "cannot use its equitable powers to ignore legal requirements set out by Congress in the Bankruptcy Code." 977 F.2d at 910 (citing *IRS v. Levy (In re Landbank Equity Corp.)*, 973 F.2d 265, 271 (4th Cir. 1992)). As stated, the Court finds the Bankruptcy Code is clear—only a trustee may employ professional persons on behalf of an estate; and a Chapter 11 trustee automatically loses his office post-conversion. *See* 11 U.S.C. §§ 327(a), 348(e) ("[c]onversion . . . terminates the service of any trustee . . . that is serving in the case before such

13

conversion"). The cases cited by King in his brief, *see* Appellee's Brief at 31–38, do not alter that conclusion, as none provides support for the proposition that a former trustee may act on behalf of the bankruptcy estate post-conversion.

The bankruptcy court's November 24 Order permitting King to employ Odin Feldman "as attorneys . . . for the estate," thus, constituted clear legal error unsupported by the *DeLash* case cited by the bankruptcy court or the Bankruptcy Code itself. The bankruptcy court should have corrected that legal error on reconsideration. The bankruptcy court's failure to do so in reliance on the "standing" observation in *Williams* suggests that it may have misapprehended David's argument as to a former trustee's inability to act on behalf of a bankruptcy estate rather than his lack of standing to argue the issue or seek retroactive approval for the period during which he served as trustee.

    **c.**    **Conclusion**

David's specific and limited argument turned on a pure question of law that did not require the bankruptcy court to "exercise its discretion in reaching a decision" because that argument did not implicate the discretionary considerations at play in 11 U.S.C. § 327(a). *See Williams*, 977 F.2d at 908 ("[T]he approval or disapproval of an application . . . pursuant to § 327 is committed to the discretion of the bankruptcy court. In the instant case, however, the bankruptcy court did not evaluate the particular circumstances and exercise its discretion in reaching a decision. . . ."); *Hamlett*, 2002 WL 32882039, at *2 (a court has "no discretion to misapply the law"). On review, the Court finds the bankruptcy court erred in its handling of that question of law when it declined to remedy a clear error in its underlying November 24 Order. The Court, therefore, will vacate the

bankruptcy court's February 1 Order and remand the case back to the bankruptcy court to reconsider its November 24 Order in light of this decision.[4]

\* \* \*

Accordingly, it is hereby **ORDERED** that the Bankruptcy Court's February 1, 2021 Order is **VACATED** and Appellant's Appeal (Dkt. No. 5) is **GRANTED** in part. The case shall be **REMANDED** to the bankruptcy court for proceedings consistent with this order.

It is **SO ORDERED.**

January 24, 2022  
Alexandria, Virginia

_____/s/_____  
Hon. Michael S. Nachmanoff  
United States District Judge

---

[4] It is worth reiterating that the only error this Court has identified with the bankruptcy court's February 1 Order is its failure to correct the underlying decision to grant King authority to act on behalf of the bankruptcy estate effective as of November 12, 2020—a date arising four months after his service as trustee for the estate terminated. The Court takes no position on the merits of other points raised by the parties during the November 12 hearing because David did not present those issues as new arguments in support of his Motion to Reconsider.

The Court also recognizes that there is no dispute that Odin Feldman actually performed the work for which it was compensated in the November 24 Order. Whether Odin Feldman is entitled to retain those fees and prevent David from recovering a windfall, however, remains a live controversy dependent on the bankruptcy court's decisions on remand. For this reason, the Court declines to accept King's argument for mootness. Indeed, on non-injunctive requests for relief, the Court does not find an issue can be mooted simply through denial of a motion to stay the underlying judgment's execution pending appeal.